**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| DAMOND HARRIS, ) | No. EDCV 08-507 CW |
| ) | |
| Plaintiff, ) | DECISION AND ORDER |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner, Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge.  Plaintiff seeks review of the denial of disability benefits.  The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

**I.  BACKGROUND**

Plaintiff Damond Harris was born on January 30, 1973, and was thirty-four years old at the time of his administrative hearing. [Administrative Record ("AR") 37, 138.]  He has a high school education and past relevant work experience as a warehouse laborer,

industrial painter, painter's helper and construction laborer. [AR 20.]  Plaintiff alleges disability on the basis of a pain in his left foot, back, neck, left hip and knees, and depression, due to a workplace accident. [AR 80.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on April 10, 2008, and filed on April 23, 2008.  On October 30, 2008, defendant filed an answer and plaintiff's Administrative Record ("AR").  On January 8, 2009, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on October 19, 2005, alleging disability since August 19, 2003. [AR 70, 138.]  After the applications were denied initially and on reconsideration, plaintiff requested an administrative hearing, which was scheduled for February 21, 2007, before Administrative Law Judge ("ALJ") Jay Levine. [AR 59.] Plaintiff did not appear at the hearing, but he later wrote a letter to the Commissioner stating that he had been involved in an automobile accident on February 15, 2007. [AR 115.]  The ALJ ordered the case dismissed on April 24, 2007, citing plaintiff's failure to provide evidence corroborating the explanation. [AR 70-71.]  Plaintiff later submitted a police report documenting the accident. [AR 117-24.]  On July 21, 2007, the Appeals Council ordered remand for an administrative hearing, finding that plaintiff had good reason not to appear at the initial hearing. [AR 126-27.]

2

An administrative hearing was held on November 28, 2007, before ALJ Levine. [AR 37.] Plaintiff appeared with counsel, and testimony was taken from plaintiff and vocational expert David Rinehart. [AR 38.] The ALJ denied benefits in a decision filed on February 12, 2008. [AR 14-21.] When the Appeals Council denied review on March 14, 2008, the ALJ's decision became the Commissioner's final decision. [AR 5-7.]

### IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence

can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## V. DISCUSSION

### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age, education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

### B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date (step one); that plaintiff had "severe" impairments, namely degenerative joint and disc disease of the cervical and lumbar spine, torn left knee ligament, and adjustment disorder (step two); and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 16, 18.] The ALJ found that plaintiff had an RFC for light work with the exception of standing or walking occasionally (two out of eight hours per day), no significant pushing or pulling with the left leg, no significant walking on uneven

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

terrain, no significant climbing or balancing, only occasional overhead lifting, and only occasional stooping, kneeling, crouching or crawling. [AR 18.]  The ALJ found that this would preclude plaintiff from performing his past relevant work (step four). [AR 20.]  The vocational expert testified that a person with plaintiff's RFC could perform work existing in significant numbers in the national economy, such as food and beverage order clerk, paramutual ticket checker, and telephone quotation clerk (step five). [AR 20-21.]  Accordingly, plaintiff was found not "disabled" as defined by the Social Security Act. [AR 21.]

**C.   ISSUES IN DISPUTE**

The Joint Stipulation identifies six disputed issues:

1. Whether the ALJ properly considered the opinion of Dr. Khalid Ahmed;
2. Whether the ALJ properly considered the opinion of Dr. Grace Roark;
3. Whether the ALJ properly considered evidence of plaintiff's depression;
4. Whether the ALJ properly considered plaintiff's testimony;
5. Whether the ALJ properly considered plaintiff's RFC; and
6. Whether the ALJ posed a complete hypothetical question to the vocational expert.

[JS 2-3.]

**D.   ISSUE ONE: DR. AHMED**

In September 2003, while he was working as a warehouse worker, plaintiff injured himself when a forklift ran over his left foot, causing him to twist his body while trying to pull away. [AR 291-92.] Dr. Ahmed conducted an initial orthopedic evaluation in October 2003

and recommended additional testing. [AR 291.] In November 2003, Dr. Ahmed diagnosed lumbar disc herniation, left foot hypertrophy and left knee internal derangement. [AR 280.] Following additional visits in October 2003, November 2003, and April 2004, Dr. Ahmed completed a permanent and stationary report in July 2004. [AR 252-63.] Dr. Ahmed concluded that plaintiff was "permanently partially disabled" and that his pain would reach a "severe level" if he stood for more than 35 to 40 minutes, walked for more than 35 to 40 minutes, walked over uneven ground, or attempted kneeling, squatting and climbing. [AR 260.] Dr. Ahmed also concluded that plaintiff "suffered definitive loss in terms of unrestricted gainful employment in the open labor market" and that he was a qualified injured worker in need of vocational rehabilitation.[2] [AR 261.]

In October 2005, Dr. Ahmed was presented with a sub rosa video from plaintiff's worker's compensation case showing plaintiff performing chores in March 2005. [AR 227.] The video showed plaintiff pushing a child in a grocery cart, shopping for approximately two hours, driving to a laundromat, folding laundry, and periodically carrying the child while finishing the chores. [AR 228-29.] Based on the video, Dr. Ahmed stated that the video "appears to show that [plaintiff] does have the ability for prolonged standing and walking" but that the video "did not show spontaneous motion of the neck, the lumbar spine, and the ability to kneel and squat." [AR 229.]

Almost one year later, in July 2006, Dr. Ahmed completed a

---

[2] In worker's compensation terms, a qualified injured worker is eligible for vocational rehabilitation when he is precluded from engaging in his past work and rehabilitation services would help him return to suitable gainful employment. See Gamble v. Workers' Comp. Appeals Board, 143 Cal. App. 4th 71, 81, 49 Cal. Rptr. 3d 36 (2006).

7

questionnaire regarding Medical Opinion Re: Ability to Do Work-Related Activities (Physical). [AR 450-52.]  Dr. Ahmed opined, among other things, that plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand, walk and sit for less than two hours in an eight-hour workday, that he could not sit or stand for more than five minutes before changing position, and that he could not walk for more than ten minutes at a time. [AR 450-51.]  Dr. Ahmed also stated that plaintiff's impairments would cause him to be absent from work more than three times per month. [AR 452.]

In the administrative opinion, the ALJ summarized Dr. Ahmed's treatment of plaintiff and the questionnaire. [AR 17, 19.] As to the latter, the ALJ stated that Dr. Ahmed's questionnaire was a "check-the-box type form without any comment [and] can be given little weight especially given the lack of related findings in his notes." [AR 17.] The ALJ also found it "inconsistent with Dr. Ahmed's findings in 2004 . . . and his repeated statements in his notes that the claimant's condition continued to be permanently partially disabled." [AR 19.] Although the ALJ found that Dr. Ahmed's opinion was not entitled to controlling weight, the ALJ's RFC determination, which limited Plaintiff to light work with two hours of standing or walking in an eight-hour workday, was consistent in some respects with Dr. Ahmed's opinion. [AR 18.]  Plaintiff argues that the ALJ's analysis of Dr. Ahmed's opinion was not supported by substantial evidence. [JS 3-5.]

The Ninth Circuit held in Lester v. Chater, 81 F.3d 821 (9th Cir. 1995), that more weight should be given to the opinions of treating doctors over non-treating doctors.  If the ALJ chooses to reject the opinion of a treating doctor that has been controverted by the opinion of another physician, the ALJ must provide "specific and legitimate

reasons" supported by substantial evidence in the record for doing so.[3]  Id. at 830.  Here, the reasons stated by the ALJ to reject the most restrictive limitations in Dr. Ahmed's opinion satisfy that standard.  Dr. Ahmed's opinion that plaintiff should be limited in standing to five minutes at a time, walking to less than ten minutes at a time, and would be absent from work more than three days per month was wholly inconsistent with his earlier findings, such as his evaluation of the sub rosa video that plaintiff was capable of prolonged standing and walking, as well as his conclusion that plaintiff was only permanently "partially" disabled; the record contains no explanation for the inconsistency.  See Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) (contradicted opinion of a treating physician was properly rejected as not supported by treatment notes); Morgan v. Chater, 169 F.3d 595, 603 (9th Cir. 1999)(holding that the ALJ permissibly relied on inconsistencies within and between the reports of the treating and examining doctors to reject their opinions); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam) (holding that the ALJ was entitled to reject a treating physician's opinion because, among other things, his report varied from his treatment notes).  Accordingly, the ALJ properly declined to give full credit to Dr. Ahmed's opinion.

**E.   ISSUE TWO: DR. ROARK**

In April 2006, plaintiff visited Dr. Grace Roark for an initial psychological pain evaluation. [AR 424.]  Dr. Roark made a mental status evaluation and administered psychological tests. [AR 426-35.]

---

[3] Here, Dr. Ahmed's opinion was controverted by the opinion of an examining physician, Dr. Thomas Dorsey, who concluded in an orthopedic consultation that plaintiff had no impairment-related physical limitations. [AR 304.]

9

Dr. Roark concluded that plaintiff had an adjustment disorder due to chronic pain and that his pain had triggered emotional symptoms. [AR 436.] Dr. Roark commented that, "Such symptoms do not constitute a psychological disability, but are an expected reaction and adjustment to his continuous experience of pain." [Id.] Dr. Roark recommended eight weeks of biofeedback therapy, with the goals that plaintiff use his relaxation skills and alleviate tension. [AR 437.] Approximately eight weeks later, Dr. Roark conducted a final treatment summary. [AR 419.] Dr. Roark noted that plaintiff had "demonstrated his ability to utilize techniques taught to him to reduce stress and tension" and "noted feeling better periodically" with psychotropic medications. [Id.] Dr. Roark assigned plaintiff a Global Assessment of Functioning ("GAF") score of 58[4] and commented that he "should continue to practice techniques learned in biofeedback and stress management therapy." [AR 422.]

In the administrative decision, the ALJ summarized the treatment plaintiff received under Dr. Roark's supervision, including her assignment of the 58 GAF score and her recommendation that plaintiff continue with stress management techniques. [AR 17.] The ALJ also noted that Dr. Roark had not been aware of the sub rosa video. [Id.] Plaintiff contends that the ALJ failed to properly consider Dr. Roark's "highly probative opinion." [JS 9.] Upon review of the record, however, Dr. Roark's opinion was not highly probative as to the issue of disability. Dr. Roark reported that plaintiff's symptoms

---

[4] A GAF score measures the patient's ability to function on a scale of 1 to 100. A score of 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Attorneys Medical Deskbook (Third), Pt. 4, Ch. 11, §11:6 (2004).

were not disabling from a psychological standpoint, that he learned effective techniques in biofeedback therapy, that he had a GAF score reflecting moderate symptoms, and that he should continue to use the techniques learned in therapy. Dr. Roark did not opine that plaintiff would be functionally limited in any way by his emotional symptoms; however, the ALJ did credit her opinion by finding that plaintiff's adjustment disorder was a "severe" impairment.  Under these circumstances, the ALJ's discussion of Dr. Roark's opinion was not erroneous.

**F.   ISSUE THREE: DEPRESSION**

In late 2006, plaintiff received one month of psychiatric treatment from Dr. Ochuko Diamreyan. [AR 443-49.]  Plaintiff complained of severe depression and insomnia since the injury. [AR 444, 448.]  In his final visit, plaintiff reported sleeping better and that he was not hearing voices or experiencing paranoia. [AR 445.] Dr. Diamreyan made a diagnosis of major depression with a GAF score of 40[5] and prescribed Cymbalta. [AR 444.]

In the administrative decision, the ALJ noted the one-month treatment with Dr. Diamreyan, the diagnosis of major depression, the prescription for Cymbalta, and the GAF score of 40. [AR 17.] The ALJ also noted that Dr. Diamreyan, like Dr. Roark, had not seen the sub rosa video. [Id.]  The ALJ found that plaintiff's medically determinable mental impairments, involving reactive anxiety and

---

[5] A GAF score of 31 to 40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

depression, with reference to the "B" criteria for the evaluation of mental disorders,[6] "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." [AR 16.]

Plaintiff argues that the ALJ did not properly consider Dr. Diamreyan's opinion that plaintiff has major depression. [JS 15.] However, based on the lack of evidence in the record that plaintiff had any significant limitations in mental functioning, the ALJ properly determined that plaintiff's depression was not severe. Dr. Diamreyan's diagnosis was unaccompanied by any findings that plaintiff had any functional deficits in relation to work ability; neither is there any evidence in the record of such limitations. Moreover, the unexplained GAF score of 40, by itself, was not essential to the accuracy of the ALJ's findings. See Howard v. Commissioner of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002). Accordingly, there was no error.

### G.   ISSUE FOUR: CREDIBILITY

During the administrative hearing, plaintiff testified that he experiences pain and fatigue and has to lie down for up to three-fourths of the day; he also complained of depression and lack of concentration. [AR 42-43.] In the administrative decision, the ALJ described plaintiff's testimony and found that, although plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms was "not entirely

---

[6] The four areas of mental functioning that are evaluated under the "B" criteria are activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00C.

12

credible." [AR 19.]  The ALJ noted that the treating medical records indicated no change in plaintiff's condition since he became permanent and stationary in 2004, that the objective medical findings were mild, that his treatment had been limited and fairly conservative except for epidural injections, and that there was no evidence of the need for more aggressive treatment or further testing and evaluation. [Id.] The ALJ also cited the sub rosa video and the lack of credible evidence of any significant ongoing psychiatric or mental health treatment. [AR 19-20.]

Plaintiff contends that this credibility evaluation was not legally sufficient under the Ninth Circuit's standard. [JS 18, citing Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).]  Upon review of the record, however, it is evident that the ALJ provided clear and convincing reasons to find plaintiff's allegations not entirely credible.  See Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)(en banc)(ALJ may rely on lack of objective medical evidence to support severity of plaintiff's subjective symptom testimony as long as it is not the only reason); Fair v. Bowen, 885 F.2d 597, 604 n. 5 (9th Cir. 1989)(ALJ may use "ordinary techniques of credibility evaluation," such as plaintiff's reputation for truthfulness); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered, as part of his credibility evaluation, the treating physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the degree of pain alleged).

**H.   ISSUES FIVE AND SIX: RFC AND HYPOTHETICAL QUESTIONS**

Finally, plaintiff contends that the ALJ's determination of his RFC and the hypothetical questions posed to the vocational expert

13

failed to take into account the limitations set out in the opinions of Dr. Ahmed and Dr. Diamreyan. [JS 22, 26.]  As discussed above, however, the ALJ provided legally sufficient reasons for why these opinions should not be fully credited.  Accordingly, these issues do not warrant reversal.

## VI.  ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**.
2. This action is **DISMISSED WITH PREJUDICE**.
3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED:   February 2, 2009

                                                                 _____/S/_____
                                           CARLA M. WOEHRLE
                                      United States Magistrate Judge